**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **JASON STEVEN MOLTHAN,**       ) | |
|           ) | |
|      **Plaintiff,**       ) | |
|           ) | |
| **v.**         ) | **Case No. 3:17-cv-00380** |
|           ) | **Judge Trauger / Frensley** |
| **MEREDITH CORP. and RAYCOM MEDIA,**   ) | |
| **INC.**         ) | |
|           ) | |
|      **Defendants.**      ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Defendants' Motion to Dismiss.  Docket No. 20.

Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum

of Law (Docket No. 21), a "Request for Judicial Notice" of the television news reports which

Plaintiff claims are the basis of this suit (the "WSMV Television News Reports"), public records

from criminal and civil cases against Plaintiff, and a Tennessee State Judiciary Committee

hearing (Docket No. 22), the Declaration of Robb S. Harvey in Support of Defendants' Request

for Judicial Notice (Docket No. 23), the Declaration of Amy Irons in Support of Defendants'

Request for Judicial Notice (Docket No. 24), and a "Notice of Filing Redacted Exhibit" (Docket

No. 26).  Also in support of their Motion, with leave of Court (Docket No. 30), Defendants have

manually filed 2 DVDs (Docket No. 31).

Plaintiff has filed a Response in opposition to Defendants' Motion.  Docket No. 32.

With leave of Court (Docket No. 34), Defendants have filed a Reply.  Docket No. 34.

Without leave of Court, Plaintiff has filed a Sur-Reply.  Docket No. 36.[1]

Plaintiff filed this pro se, in forma pauperis action pursuant to 28 U.S.C. §1332 and Tenn. Code Ann. §§28-3-104 and 29-24-104, alleging that Defendants committed "Libel + False Light + Privacy Invasion" against him in their: (1) reporting that he was a "convicted felon"; (2) characterizing him as a "potential and highly likely murderer and rapist"; (3) insinuating that he was a "psychopath" and/or had been diagnosed with "psychosis"; (4) displaying his photograph near the statement "76% of women who are killed by a man"; (5) being referred to as a "stalker"; (6) reporting that his accuser had "blocked" him while also reporting on the text messages and voicemail messages she stated she received; (7) characterizing Plaintiff as "being a danger" and being "on the verge of harming" others; (8) depicting Plaintiff as being "homeless" and "wandering the streets"; and (9) failing to contact Plaintiff directly to verify the information they were reporting and to get his consent to report it.  Docket No. 1.  Plaintiff contends that Defendants had "no privileges" to report what they did, because there was "no substantial truth," but rather, only "fraud and misrepresentation" that violated his rights "in the form of a false arrest for being 'that guy on TV.'"  *Id.*  Plaintiff reiterates his averment that Defendants should have done basic research and contacted him to verify the information prior to reporting it.  *Id.*

Plaintiff avers that this Court has diversity jurisdiction because the amount in controversy exceeds $75,000, Plaintiff "is a citizen of Texas," Defendant Meredith Corporation "is a citizen of Iowa," Defendant Raycom Media, Inc. "is a citizen of Alabama," and the "Tort was originated in Nashville Tennessee, and was then repeated on News Broadcasts Nationally in many states,

---

[1] Even though Plaintiff did not seek leave of Court to file his Sur-Reply, the undersigned will nevertheless consider it.

[and] can be viewed Globally via the Internet." *Id.* Plaintiff additionally avers that venue is proper in this Court because he is "ordered by Davidson County to remain in Davidson County until July 31, 2018 and cannot go anywhere else until that court order is changed." *Id.*

Plaintiff avers that he has been damaged because he is "now forever infamous worldwide." *Id.* Specifically, Plaintiff contends that he has been harmed because: (1) he is now "subject to public scrutiny; is ill-dignified, insulted, subject to provocations, ridiculed, and [he] faces random threats of harm"; (2) his "career as a journalist and online media personality is destroyed"; (3) his "future job opportunities are significantly damaged" because "no one wants to hire a 'psychotic killer rapist stalker'"; (4) his "opportunity to finish [his] college education is destroyed" as "admissions into all prestigious universities are destroyed"; (5) his "children and wife, friends and family no longer trust" him and his "reputation and character [have been] completely obliterated as society, even family, trust T.V. news more than anything else"; (6) he "faces false arrests for infamous reputation;" and (7) he "is recognized somewhat often, treated like a killer and threatened with trouble or harm." *Id.*

Plaintiff further contends that he has suffered "spiritual distress," as well as "significant mental and emotional suffering and anguish" including "lowered esteem," "dishonor," and being "humiliated, ostracised [*sic*], and shunned in contempt." *Id.* He maintains that he will suffer "social, career, and educational damages and disadvantages," "threats to [his] valid rights (false arrests)," and "threats to [his] well-being." *Id.* Plaintiff avers that women fear him now and "deride and denigrate his character," and that as a result of Defendants' actions, he "cannot find a spouse because infamy cannot be hidden - Google prevents hiding anything." *Id.* He asserts that his name has been exploited for no reason and without compensation, and he notes that the

"commercial value of [his] name [has been] significantly depreciated." *Id.*

Plaintiff seeks an Order requiring Defendants "to make retractions of all articles involved and to apologize 'on-air' for damaging [P]laintiff"; an Order requiring Defendant Meredith Corporation "to give [P]laintiff 'air-time' equal to the amount used in the defamation so he might redeem his character (by either correcting the record, giving [P]laintiff's side of the story, or allowing [P]laintiff to promote various charities for paraplegic and burn victim children); $1,830,000 in compensatory damages "for Defamation, False Light, Privacy Invasion"; and $1,500,000 in punitive damages. *Id.*

Defendants filed the instant Motion and supporting materials arguing that this action should be dismissed because: (1) libel and false light claims are subject to the fair report privilege, and the news reports at issue are a fair and accurate summary of the account given in the criminal and civil court filings, as well as the testimony given by Ms. Gillet to the Tennessee General Assembly; (2) Plaintiff's libel claim, which is based on a single statement in one news report that he was convicted of aggravated stalking, cannot stand because the news report is substantially true, as Plaintiff pled guilty to two charges of aggravated stalking and one charge of harassment; (3) the news reports are not defamatory; (4) Plaintiff's claims fall short of the constitutional "actual malice" standard, as Plaintiff's allegations are conclusory and Plaintiff fails to make any allegation in his Complaint that Defendants made any published statements with reckless disregard to whether they created a particular misleading impression; (5) Plaintiff's "reputation"-based claims must be dismissed under the "libel-proof plaintiff" doctrine, since Plaintiff pled guilty to aggravated stalking and harassment, which were made findings of fact in the order of protection case; (6) Plaintiff's claim for "privacy invasion" cannot stand because it

falls under the fair report privilege since it is based on a probation report, it is substantially true, it does not meet the "actual malice" standard, and it is not "highly offensive"; and (7) Plaintiff's claim for public disclosure of private facts cannot stand because the allegedly offending statement was based upon facts that are open to the public eye and is not "highly offensive." Docket No. 20.

Plaintiff responds that he objects to the media reports and statements made by Defendants and he argues that the reports are "untrue and libelous, unfaithful to the statutory purposes of TCA § 40-35-313, depict him in a false light, and damage his privacy and reputation wrongly and unlawfully." Docket No. 32. Plaintiff maintains, therefore, that Defendants "deprived [him] of his common law rights and statutory protections from libel and slander, false light misrepresentations, and unwarranted damages to his reputation and privacy." *Id.* at 1-2.

Specifically, Plaintiff argues that Defendants are not entitled to the "Fair Report Privilege" because although they maintain that they relied upon "court filings and testimony given by Ms. Gillett to the Tennessee General Assembly," "this is patently false and can easily be proven." *Id.* at 6. Plaintiff contends that Defendants cannot substantiate their claim that Plaintiff was "Convicted of a Felony" because no such record exists since he "received an Order for Deferral (Judicial Diversion) which proves that [he] cannot be legally classified as 'Convicted' in the public eye in accordance with the stipulations set forth by TCA § 40-35-313." *Id.* at 6-7 (emphasis original).

Plaintiff additionally argues that Defendants cannot rely upon the records in the ongoing civil case concerning the order of protection sought by Ms. Gillett in labeling him as "convicted" or in justifying depicting him as a highly likely suspect to commit future rapes or murders or in

justifying depicting him as psychotic or dangerous, because the news reports occurred from January 2016 to April 2016, but the civil case referenced dates from May 2016 to April 2017. *Id.* at 7. Plaintiff asserts that Defendants cannot claim Ex Post Facto records as their "source," and he notes that they cite a 2017 "finding of fact" by the Court of Appeals that is being challenged. *Id.* Plaintiff maintains that Defendants' Request for Judicial Notice of these documents should be denied and the documents should be excluded. *Id.* at 7-8. Plaintiff further argues that Defendants cannot use "Case 14OP2920" to justify their actions since "Case 14OP2920" was a "secret Ex Parte case" that "went nowhere and dissolved after the time limitations elapsed when Tennessee failed to inform the respondent (Plaintiff) of it's [*sic*] existence, and when he did arrive in Nashville 5 months later it was never mentioned and he was never charged for violating it because it had dissolved in accordance with the guidelines set forth in TCA § 36-6-305." *Id.* at 8 (emphasis original). Plaintiff maintains, "Case 14OP2920, having never materialized and no notice ever granted to the respondent, *does not constitute as proof of "Fair Report Privilege" for [Defendants] in anyway whatsoever when they claimed [Plaintiff] was a* 'Convicted Felon.'" *Id.* (emphasis original).

Plaintiff also maintains that "the mere existence of an Order of Protection on its face value does not constitute as evidence of a 'Conviction' in terms of Media Portrayal nor does it justify the other actions of the Defendant's [*sic*] alleged herein." *Id.* at 9. Plaintiff notes that he had to sign the Order of Protection in order to satisfy the District Attorney and get Diversion, and he adds that he "is still attempting to challenge it's [*sic*] legality by revealing that the District Attorney violated Tennessee law when requiring the Plaintiff to sign it, as Tennessee law prohibits them from having any place in an Order of Protection's negotiations or using it as a

device in a bargain." *Id.*

As to Defendants' reliance on the Tennessee General Assembly testimony of Mrs. Gillett, Plaintiff contends that her testimony was hearsay and can neither prove that he is a "Convicted Felon" nor justify their actions "because Mrs. Gillett is a private citizen, her testimony was not made under oath so she is immune from perjury, the actual text message record proves she is lying, and nothing in her testimony proves that he is a "Convicted Felon" or justifies Defendants' actions. *Id.*

Plaintiff next argues that Defendants never revealed their source for determining that Plaintiff was a "Convicted Felon," never explained that Judicial Diversion-Deferral "grants the Plaintiff legal immunity to public characterization as such," and failed to perform reasonable due diligence in researching the actual criminal case documents or the terminology employed. *Id.* at 10. Plaintiff adds that even if Defendants had researched the criminal cases and obtained copies of the Deferral Order to review, they did not fairly or accurately use those documents in their reports and broadcasts, and they did not explain that he had not been technically "Convicted" of any crimes, but rather had "instead signed a contract with the District Attorney to avoid 'Conviction' and maintain a clean unblemished record in order to keep a spotless reputation in the public realm." *Id.* Plaintiff maintains that journalists are "expected to do more than merely repeat the claims of a private citizen," and he asserts that Defendants failed to use good faith in their reporting or adhere to basic standards of professionalism. *Id.* at 10-11.

Regarding Defendants' reporting that Plaintiff is homeless, Plaintiff argues that he is not, in fact, homeless because he has permission to sleep at a church while he is "stranded" in Nashville and Defendants have no right to discuss his housing situation with the public and have

no justification for "mischaracterizing his demeanor in such a damaging way." *Id.* at 12. Plaintiff maintains that Defendants' "revelation is invasive, defamatory, and damaging." *Id.* Plaintiff summarizes that Defendants' actions do not qualify under "Fair Report Privilege" because, "[r]ather than merely giving fair and accurate coverage of government proceedings and testimony within them, the Defendants took it upon themselves to create a highly offensive depiction and characterization of the Plaintiff which condemned him to infamy in the eyes of the public despite being prohibited by statute." *Id.*

Turning to Defendants' assertion that their reports and broadcasts were "substantially true" and therefore protected, Plaintiff responds that his pleading guilty and receiving Judicial Diversion - Deferral is not the same thing as being a "Convicted Felon" such that the news reports were not true and not entitled to protection under the truth defense. *Id.* at 13. Plaintiff argues that Defendants' broadcasting of such, without explaining T.C.A. § 40-35-313, violates the legislation's purpose and the goals of rehabilitation and second chances. *Id.* at 13-14. Plaintiff maintains that he was under diversion, and not considered to be on formal probation or parole since he was never "Convicted" of any crime. *Id.* at 14. Plaintiff asserts that T.C.A. § 40-35-313 "does not protect members of the public (such as media corporations, private citizens, etc) from liability in characterizing the contractee as 'Convicted' because that is the entire purpose of the Diversion scheme to begin with, to rehabilitate the Defendant, offer a second chance at doing good, protect the status quo of their prior reputation, and to avoid the 'sting or stigma' of 'Conviction.'" *Id.* at 15.

Plaintiff further maintains that the media does not meet the criteria of T.C.A. § 40-35-313 because T.C.A. § 40-35-313 has specific limitations to how a Diversion Order can be construed

as a guilty plea, and media corporations labeling someone as "Convicted" is not one of those exceptions. *Id.* at 16. Plaintiff additionally argues that "Judicial Diversion is Immunity from Conviction in this Case." *Id.* Plaintiff explains, "Judicial diversion [] avoids an adjudication of guilt, and so long as the person does not violate the terms of probation, the charges will be dropped and proceedings dismissed, never resulting in a 'conviction.'" *Id.* at 17. Plaintiff asserts that "a guilty plea under Tenn. Code Ann. §40-35-313, *even before eventual expungement*, is not an adjudication of guilt and not a conviction." *Id.* at 19 (emphasis original). Plaintiff argues, "If the Defendants are allowed to escape liability from claiming the Plaintiff is a 'Convicted Felon' than [*sic*] it defeats the entire premise, theory, and purpose of Judicial Diversion, and renders it a meaningless statute of little to no value." *Id.* at 20.

Plaintiff also asserts that "Allowing the Defendants to Escape Liability Challenges the Legal Standing of the Original Criminal Case 2015-1-469 and the Constitutionality of Judicial Diversion" which "could potentially undermine the entire case." *Id.* Plaintiff argues that this Court has no choice but to deny the instant Motion "to maintain uniformity with the Davidson County Criminal Court and the Tennessee Legislature" and to "uphold the statute and protect it's viability as a legal concept." *Id.* at 21.

Plaintiff next responds that, in defending a defamation action, it is insufficient to show that the imputation is "substantially true." *Id.* He notes that he is not "infamous," still has the right to vote, maintains that a conviction is a verdict or adjudication of guilt while a judicial diversion is not, and would like a jury to decide whether there is a noteworthy distinction. *Id.* at 22-23. Plaintiff also "suggests that the Court ignore or overrule the various citations from prior courts that decided otherwise as their judgments were clearly in error (probably because they

were not presented with enough evidence or a well crafted argument explaining the significance and importance of Judicial Diversion immunities).” *Id.* at 23.

Plaintiff contends that judicial diversion precludes an adjudication of guilt and he maintains that “although the meaning [of conviction] differs based on context, [] it generally refers to a step in the judicial process, namely the “Verdict” phase (finding of guilt).” *Id*. at 26. He explains that because he “never reached a ‘Verdict’ or ‘Finding of Guilt’ in his criminal case and instead received Judicial Diversion, it would appear certain that he has been immunized from the characterization of ‘Convicted Felon’ in all instances except those enumerated within the statute itself. And again, the statute makes no exceptions for News Broadcasts.” *Id.* at 26-27.

Plaintiff adds that he “lives in ‘Good Standing’” and has a “Spotless Unblemished Reputation in the Community,” such that he is not “libel-proof.” *Id.* at 27. Plaintiff reiterates his assertion that Defendants cannot use a 2017 Tennessee Court of Appeals opinion in his case to justify stories they ran in 2016. *Id.* at 28. Plaintiff also maintains that an Order of Protection is “easily obtained” and he notes that there are different standards for whether Ms. Gillett is entitled to an Order of Protection than whether Defendants are entitled to claim that Plaintiff is a “convicted felon.” *Id.* Plaintiff adds:

> The Plaintiff’s conviction record contains *zero convictions*. He is an adult male that is 36 years old. He always says thank you and holds the doors for people and helps others in every way he can manage reasonably. All people that know him (with the exception of Mrs. Gillett), including his wife, family, friends, etc., will attest to this fact. The only time in his entire life anyone ever alleged something was his mistake to befriend and text message Mrs. Gillett, which he sorely regrets.
> If the Court desires, the Plaintiff can even provide medical records from official State funded mental health professionals that show he has never even received a single diagnosis of any mental

> health issues and is considered an intelligent, thoughtful, warm-
> hearted individual. He is at worse "misunderstood", and certainly
> not a trouble maker. He minds his own business and respects the
> Liberty of all human beings everywhere, as well as mindfully
> adheres to Government Authority even if he protests their
> decisions verbally. He follows all lawful Orders.
>       The Plaintiff has a spotless Reputation, and in no way can
> be considered "Libel-Proof".

*Id.* at 29-30.

Finally, Plaintiff responds that Defendants' reports and broadcasts cast him in a false light, "holds him up to undue Infamy, Notoriety, Hatred, Scorn, Contempt, Fear, and Ridicule," are not substantially true, and do not give a fair and balanced neutral account of his character. *Id.* at 30. Plaintiff maintains that Defendants "are so recklessly negligent in performing their duties of professional journalism that it can be considered malicious," such that he should recover for the damage they caused. *Id.*

Defendants, in their Reply, assert that Plaintiff has failed to adequately plead his claims, and they maintain that this action should be dismissed for the following reasons: (1) the news reports are subject to the "fair report" privilege; (2) the news reports are true or substantially true; (3) the news reports are not defamatory; (4) Plaintiff's allegation of "actual malice" is conclusory and insufficient to plead a claim; (5) Plaintiff is libel-proof as a result of his own actions, which he admitted while pleading guilty to aggravated stalking and harassment and which were made findings of fact in the Order of Protection case; and (6) Plaintiff's challenges to published matters which are openly known to the general public cannot be the subject of vague "privacy invasion" claims. Docket No. 35.

Addressing each ground in turn, Defendants contend that none of Plaintiff's arguments

regarding why the fair report privilege should not be applied in this case negate the privilege or demonstrate the existence of a cause of action. *Id.* at 2. Defendants reiterate their contention that their reports were based on records from criminal proceedings, circuit court records, and testimony and legislator comments at a Tennessee Senate Judiciary Committee hearing, all of which, they argue, are admissible to show the good faith nature of their "true or substantially true" reporting. *Id.*

Defendants further reply that Plaintiff's assertion that the court records and proceedings on the Orders of Protection do not label him as "convicted" "misses the point" because the cited case law rejects Plaintiff's argument that he had not technically been convicted even though he was guilty of the charges and had admitted as much. *Id.* at 2-3, *citing Milligan v. U.S.*, 644 F. Supp. 2d 1020, 1034 (M.D. Tenn. 2009), *aff'd on this point*, 670 F.3d 686, 697 (6th Cir. 2012). Defendants additionally respond that although Plaintiff maintains that they relied on two records that post-date the news reports, they did not cite the appellate decision itself, but instead relied upon the same public records as did the appellate court. *Id.* at 3-4. Defendants note that the continuation of the Order of Protection was not relied upon in the news reports, but rather, was submitted to this Court solely for completeness. *Id.* at 4.

As to Plaintiff's assertion that Ms. Gillett's ex parte Order of Protection should be excluded because he was not given notice, Defendants reply that Orders of Protection are routinely applied for before giving notice to the threatening party, and whether Plaintiff had notice before Ms. Gillett received her Order of Protection has no bearing on the fair report privilege. *Id.* Turning next to Plaintiff's contention that Defendants should not have relied upon Ms. Gillett's testimony before the Tennessee Senate Judiciary Committee because she "is a

private citizen, her testimony was not made under oath . . . the actual text message record allegedly proves she is lying . . . and because nothing in that testimony is evidence that the Plaintiff is a 'Convicted Felon' or justifies the actions of the Media Defendants," Defendants reply that Plaintiff's accusations against Ms. Gillett do not change the nature of the public record or Defendants' reliance upon the fair report privilege. *Id.* Defendants contend that no Tennessee authority supports Plaintiff's argument that a Senate hearing does not fall under the privilege, or that the testimony must be under oath. *Id.* at 5. Defendants maintain that the "news media is entitled to report on public meetings of all shapes and sizes - Metro Council meetings and committees, election boards, police oversight boards, etc." *Id.* Defendants argue that this Court's review of the public records they relied upon will demonstrate that their reporting was accurate and balanced, such that Plaintiff's Complaint should be dismissed. *Id.*

Addressing Plaintiff's contentions that Defendants refused to disclose their "ultimate source" that Plaintiff was a convicted felon and that Defendants failed to act with "good faith" by not giving an honest account of that source, Defendants note that Plaintiff cites no legal authority in support of either argument, and they reply that Plaintiff has failed to do so because no such legal authority exists. *Id.* Defendants further reply that Plaintiff's assertion that deferral makes him "immune" from the "sting or stigma associated with conviction" is simply untrue, as the act of deferral does not make Plaintiff "immune" from public opinion, but rather, is his own actions, which he pled guilty to and received punishment for that creates any "sting or stigma" in the minds of the viewers. *Id.* at 6.

Turning next to Plaintiff's libel claim, Defendants argue that their reports are substantially true such that Plaintiff's libel claim should be dismissed under the substantial truth

doctrine. *Id.* at 6-7. Defendants reply, "The inquiry for 'substantial truth' is not technical accuracy, but instead is whether the challenged statement 'as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Id.* at 7, *citing Windsor v. Tennessean*, 654 S.W.2d 680, 686 (Tenn. Ct. App. 1983), *quoting Memphis Pub. Co. V. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978). Defendants assert that Plaintiff's reliance upon Tenn. Code Ann. § 40-35-313(b) to support his contention that the substantial truth doctrine should not apply is misplaced because Tenn. Code Ann. § 40-35-313(b) provides a mechanism for obtaining an order of expungement following successful judicial diversion, but the charges against Plaintiff have not been expunged. *Id.* at 8. Similarly, Defendants argue that Plaintiff's quoting over 2 pages of a Tennessee Attorney General opinion is also misplaced because the quoted passages apply only to licensed armed and unarmed security officers. *Id.*

Addressing Plaintiff's judicial deferral or diversion arguments, Defendants reply that "Plaintiff's guilty plea itself is what allowed the Court to enter a judicial diversion of the Plaintiff's charges - without such a plea, the case would have continued to trial." *Id.* at 7. Defendants further reply that "the Request for Judicial Diversion is a certified public record that clearly indicates the Plaintiff pled guilty to two charges of aggravated stalking and one charge of harassment. Plaintiff contradicts his own argument by first arguing that he did not plead guilty, but then argues at length that a guilty plea is not a conviction under the deferral statute." *Id.* Defendants continue, "Not only does Plaintiff contradict the official record of his plea, but his arguments acknowledge the fact of his plea." *Id.* Defendants additionally assert that Plaintiff's stigma avoidance arguments conflate judicial diversion with pretrial diversion. *Id.* at 9. Defendants contend that, because Plaintiff's diversion carries an adjudication of guilty, the gist of

the news story does not change based on the use of the term "convicted" rather than "judicial deferral." *Id.*

With regard to Plaintiff's assertion that because a conviction has not been entered for the charges he pled guilty to, he should not be found to be "libel-proof," Defendants respond that the law it well-settled that a person having a poor reputation cannot suffer harm as a result of the allegedly false and defamatory remarks. *Id.* at 10. As to Plaintiff's false light claims, Defendants maintain that Plaintiff must show that they created a false impression which is defamatory, which Plaintiff cannot do since the news reports accurately report, based upon public records, that Ms. Gillett feared for her safety as a result of Plaintiff's actions, and none of the challenged statements constitute misleading factual statements. *Id.* at 10-11. Defendants reiterate their assertion that Plaintiff's claims are conclusory. *Id.* at 11. Defendants note that actual malice requires falsity as a prerequisite; the test cannot be satisfied when the challenged statement is true. *Id., citing Air Wis. Airlines Corp v. Hoeper*, 134 S. Ct. 852, 861-62 (2014). Defendants argue that because both libel and false light invasion of privacy require proof of reputational harm, Plaintiff cannot sustain those claims and they should be dismissed. *Id.* at 10.

Finally, addressing Plaintiff's claim that Defendants' reference to him as "homeless" constitutes both a false light and invasion of privacy claim, Defendants reply that their reference to Plaintiff as "homeless": (1) falls under the fair report privilege because it is backed up by a probation report, which is a public record; (2) is substantially true; (3) does not meet the "actual malice" standard; (4) is neither "private" nor "highly offensive" to a reasonable person; and (5) the fact that Plaintiff, "a confessed stalker who pled guilty," could be anywhere is a matter of legitimate concern to the public. *Id.* at 12-13. Defendants assert that regardless of whether

15

Plaintiff feels "misunderstood" or that it was "unfair and unkind" to characterize him as "homeless," no claim for "privacy invasion" has been stated, such that the claim should be dismissed. *Id.* at 13.

Plaintiff, in his Sur-Reply, "sees fit to add additional clarification to the issues contested by the Defendants as it appears the Defense is equivocating and supplying specious reasoning and fallacious argumentation in order to conflate and confuse matters being disputed before the Court." Docket No. 36, p. 1. Plaintiff reiterates his contentions that, under T.C.A. § 40-35-313, he is not a "convicted felon" because he received a "reprieve," and did not face any "punishment" because no statutory sentence was meted out as a result of a "conviction," but rather, he "agreed to contractual term with the prosecution in order to avoid 'a trial and potential conviction.'" *Id.* at 2. Plaintiff additionally reiterates his position that neither an Order of Protection nor testimony from Tennessee State legislative hearings can constitute "evidence" that he is a "convicted felon," nor "does it justify depicting him as a 'potential murderer, rapist, or psychopath.'" *Id.* Plaintiff further reiterates that Defendants "cannot cite Ex Post Facto evidence to justify their actions an entire year prior." *Id.*

Addressing Defendants' "good faith and sourcing claims," Plaintiff essentially argues that Defendants do need a "real source for their claims," are not "entitled to misconstrue existant [*sic*] records into something they are not and to prophetically interpret future Ex Post Facto records as their evidence of the Plaintiff's 'conviction.'" *Id.* Plaintiff maintains that the "'Good Faith' doctrine is as old as the law itself, and dates back to ancient Rome and is iterated within the Magna Carta and is a founding principle of the American legal system." *Id.*

As to his libel claim, Plaintiff argues that "he maintains good standing with society"

16

because his "reputation is spotless and his record is clean." *Id.* at 5. He concedes, however, that he is "not immune from public opinion," "but points out that statements of fact such as that the Plaintiff is a 'convicted felon', along with their other statements of fact, are not 'opinions' but instead are 'factual assertions,'" and T.C.A. § 40-35-313 "grants immunity from such assertions of fact if it is false and cannot be proven." *Id.* at 3. Plaintiff argues that if it were not to avoid being labeled and stigmatized as a "convicted felon," there is no valid purpose for T.C.A. § 40-35-313, "and in fact it merely eradicates his civil rights without any compensation. He might as well have fought a trial and faced a conviction, because T.C.A. § 40-35-313 precludes him from any ability to appeal and it prevents him from utilizing post-conviction strategy." *Id.* at 4. He maintains that because under Judicial Diversion he has not been "convicted," he can neither "appeal" nor "challenge the decision through post-conviction procedure." *Id.* Plaintiff asks this Court to "uphold and enforce the contract between Plaintiff and the State of Tennessee which promises him immunity from infamy." *Id.* at 5.

Regarding his false light claim, Plaintiff argues that his "future reputation matters and the only information about any of this that will be in the public sphere will be the Defendant's articles and videos. He requests that this defamatory information be ordered by this Court to be retracted and removed so that he can proceed with his life accordingly without all of the contempt that these articles and reports will inevitably result in." *Id.* at 5-6.

Addressing his actual malice allegations, Plaintiff maintains that his prior submissions contained "far more than conclusory statements," and he asserts that "he actually explains what the Defendant[s] did and why they should have known better." *Id.* at 6. With respect to his invasion of privacy claim, Plaintiff argues that there "was nothing fair or balanced about

17

[Defendants'] entire depiction of the Plaintiff." *Id.* He argues that being "homeless" cannot be a "legitimate safety concern" because even people who live in houses can go into public. *Id.*

Finally, Plaintiff argues that he signed the Judicial Diversion "contract and relie[d] upon it's promises" that it would "provide immunity from stigma and maintain clean records and good reputations." *Id.* at 7. Plaintiff reiterates his contentions that, "because there seems to be a lot of confusion about how Judicial Diversion works and because many courts seems to contradict each other on how it ought to be interpreted," this Court "needs to bring the statutes into conformity with the law and to set the record straight." *Id.*

For the reasons discussed below, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 20) be GRANTED and that this action be DISMISSED.

## II. Law and Analysis

### A. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545,

548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B. Libel

Libel is a form of defamation. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.,* 876 S.W.2d 818, 820 (Tenn. 1994). Ordinarily, a libel action involves a written defamation. *Id.* Broadcasts, however, "should be considered as libel; particularly if they are based on written scripts." *Ali v. Moore,* 984 S.W.2d 224, 227 (Tenn. Ct. App. 1998).

In order to establish a *prima facie* case of defamation, a plaintiff must prove the following elements: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with

negligence in failing to ascertain the truth of the statement. *Hibdon v. Grabowski,* 195 S.W.3d 48, 58 (Tenn.Ct.App.2005), *quoting New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)(other citations omitted).

If the plaintiff in a case of libel is a public official or public figure, he/she must also prove that the libelous statements were made with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* The public figure must demonstrate evidence of actual malice with "convincing clarity." *Id.* However, the basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person. *Id.*

## C.  False Light Invasion of Privacy

The Tennessee Supreme Court has adopted the definition of false light invasion of privacy found in Section 652E of the Restatement (Second) of Torts:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977); *see Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*, 389 S.W.3d 313, 317 (Tenn. Ct. App. 2012).  *See also, West v. Media Gen. Convergence, Inc.,* 53 S.W.3d 640, 643–44 (Tenn. 2001); *Flatt v. Tenn. Secondary Sch. Athletic Ass'n,* M2001–01817–COA–R3–CV, 2003 WL 61251, at *2 (Tenn. Ct. App. Jan. 9, 2003).

The falsehood involved in a false light action "may consist in dissemination of matters which, while technically true, give an objectionably false impression where the communicator fails to modify the basic statement with amplifying facts which modify the statement to create a less objectionable impression corresponding to full reality." *Eisenstein*, 389 S.W.3d at 318, *citing* Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Cognizability and Elements,* 57 A.L.R.4th 22, § 13 (Cum.Supp.2012).

When the plaintiff is a public official or public figure, the appropriate standard for false light claims is actual malice. *West,* 53 S.W.3d at 647.

As to damages, damages are addressed in Section 652H of the *Restatement (Second) of Torts* (1977), which provides:

> One who has established a cause of action for invasion of his privacy is entitled to recover damages for:
>
> > (a) the harm to his/her interest in privacy resulting from the invasion;
> > (b) his/her mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and
> > (c) special damage of which the invasion is a legal cause.

Consistent with defamation, plaintiffs seeking to recover on false light claims must specifically plead and prove damages allegedly suffered from the invasion of their privacy, and there must be proof of actual damages. *See Memphis Publishing Co. v. Nichols,* 569 S.W.2d 412, 419 (Tenn. 1978); *Myers v. Pickering Firm, Inc.,* 959 S.W.2d 152 (Tenn. Ct. App. 1997). The plaintiff need not prove special damages or out of pocket losses necessarily, as evidence of injury to standing in the community, humiliation, or emotional distress is sufficient. *Myers*, 959 S.W.2d at 164.

**D. Fair Report Privilege**

The Tennessee fair report privilege is a well-established Tennessee common law doctrine that protects media entities that report on official actions and proceedings. *Milligan v. U.S.,* 670 F.3d 686, 696 (6th Cir. 2012), *quoting Lewis v. NewsChannel 5 Network, L.P.,* 238 S.W.3d 270, 285 (Tenn.Ct.App.2007). The report of the official action must be "a fair and accurate summation of the proceeding" and "display balance and neutrality." *Lewis,* 238 S.W.3d at 284, *quoting Smith v. Reed,* 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996). Small discrepancies between the contents of the official action and the news report do not make a report unfair or inaccurate, so long as the statements in the news report are not false in relation to the contents of the official action. *Milligan,* 670 F.3d at 697, *quoting Lewis,* 238 S.W.3d at 284. The report need only convey "a correct and just impression of what took place" to be considered fair and accurate for these purposes. *Id.*

If the Court determines that a news report is of an official action that falls under the fair report privilege and that the report is a fair and accurate impression of the communication or event, it does not matter that the report may contain material that is detrimental to the subject of the report. *Stem v. Gannett Satellite Info. Network, Inc.,* 866 F.Supp. 355 (W.D. Tenn. 1994), *quoting American Publishing Co. v. Gamble,* 115 Tenn. 663, 678, 90 S.W. 1005 (1905). A plaintiff may defeat the privilege, however, by proving by clear and convincing evidence that the defendant acted with actual malice. *Lewis,* 238 S.W.3d at 283. A report is given with actual malice when the reporter knows it is false or recklessly disregards whether the contents of the report are truthful or not. *Milligan,* 670 F.3d at 698, *quoting N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). A reporter recklessly disregards the

truth if they have serious doubts as to the truth of the official action or communication. *Id.,
quoting Compuware Corp. v. Moody's Investors Servs., Inc.,* 499 F.3d 520, 526 (6th Cir. 2007).
If there are no serious doubts about the truthfulness of the official communication, there is no
duty to investigate its contents, even if it would be prudent to do so. *Id.*, *quoting Harte–Hanks
Comm., Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

**E.  The Case at Bar**

As discussed above, Plaintiff avers that Defendants committed libel and false light
invasion of privacy against him by reporting and re-broadcasting that he was a "convicted felon,"
a "potential and highly likely murderer and rapist," a "psychopath" and/or had been diagnosed
with "psychosis," a "stalker," "a danger," "on the verge of harming" others, "homeless," and
"wandering the streets."  Docket No. 1.  Plaintiff also takes issue with Defendants displaying his
photograph near the statement "76% of women who are killed by a man" and reporting that his
accuser had "blocked" him while also reporting on the text messages and voicemail messages she
stated she received.  *Id.*  Plaintiff maintains that Defendants violated basic principles of
journalism by failing to contact him directly to verify the information they were reporting and to
get his consent to report it.  *Id.*

As has been set forth, in order to recover on his libel claim, Plaintiff must prove that
Defendants published a statement with knowledge that the statement was false and defaming or
with reckless disregard for the truth of the statement or with negligence in failing to ascertain the
truth of the statement.  *Hibdon,* 195 S.W.3d at 58 (other citations omitted).  Additionally,
Plaintiff must establish that the defamation has resulted in an injury to him.  *Id.*  In the case at
bar, there is no question that Defendants published statements about Plaintiff when they

broadcast and re-broadcast their news report. The issues before the Court, therefore, are whether the news reports were false or defamatory, or made with reckless disregard for the truth, or made with negligence in failing to ascertain the truth of the statement, and whether the broadcast and re-broadcast fall under the fair report privilege.[2] Because the televised news reports, public records from the relevant criminal and civil cases against Plaintiff, and testimony from the Tennessee Senate Judiciary Committee that have been submitted to this Court are integral to this action and form the basis of Plaintiff's Complaint, the undersigned will take judicial notice of their contents.

Construing the allegations of Plaintiff's Complaint recounted above liberally, Plaintiff's allegations are conclusory and fail to state a claim of libel against Defendants for which relief can be granted. Additionally, a review of the news reports, public records from the relevant criminal and civil cases against Plaintiff, and testimony from the Tennessee Senate Judiciary Committee reveals that Defendants did not publish the report with knowledge that any statement was false and defaming or with reckless disregard for the truth of their statements or with negligence in failing to ascertain the truth of the statements. *Hibdon,* 195 S.W.3d at 58 (other citations omitted). Moreover, the news reports at issue were related to anti-stalking legislation proposed and passed in Tennessee in 2016 that was successfully passed in large part due to the efforts of Ms. Gillett, who had been subjected to aggravated stalking and harassment by Plaintiff, and who

---

[2] If the undersigned finds that the reports are defamatory and not subject to the fair report privilege, then the undersigned will examine whether Plaintiff has established that he suffered an injury.

received Orders of Protections as a result.[3]  The news reports, therefore, are subject to the fair report privilege.  For these reasons, Plaintiff cannot sustain his libel claim against the Defendants and that claim should be dismissed.

Turning to Plaintiff's false light invasion of privacy claim, as discussed above, Plaintiff can recover only if he can establish that Defendants placed him in a false light that would be highly offensive to a reasonable person and Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.  Restatement (Second) of Torts § 652E (1977); *Einstein*, 389 S.W.3d at 317, *West*, 53 S.W.3d at 643-44.  Again, Plaintiff's allegations are conclusory.  Moreover, the news report at issue simply did not portray Plaintiff in a false light.  Accordingly, Plaintiff cannot sustain his false light invasion of privacy claim against Defendants and that claim should be dismissed.

### III.  Conclusion

For the reasons discussed above, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 20) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of

---

[3] Plaintiff pled guilty to two counts of aggravated stalking and one count of harassment, had an Order of Protection entered against him, and is currently on probation.

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge